Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4704 | **DATE** | 9/17/2003 |
| **CASE TITLE** | SOLAIA TECHNOLOGY LLC vs. ARVINMERITOR, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: For the foregoing reasons, this Court denies joint defendants' motion for summary judgment with prejudice [#210-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | SEP 19 2003 | |
| | Notified counsel by telephone. | | date docketed | 457 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CG courtroom deputy's initials | | 03 SEP 18 PM 1:17 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOLAIA TECHNOLOGY LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARVINMERITOR, INC., ) <br> THE BOEING COMPANY, ) <br> CALLAWAY GOLF COMPANY, ) <br> CONOCO, INC., ) <br> ENBRIDGE, INC., ) <br> ENBRIDGE ENERGY COMPANY, INC., ) <br> ENBRIDGE ENERGY PARTNERS, L.P., ) <br> THE GILLETTE COMPANY, ) <br> SUN CHEMICAL CORPORATION, and ) <br> TYCO INTERNATIONAL (U.S.) INC. ) <br> ) <br> Defendants. ) | **DOCKETED** <br> SEP 1 9 2003 <br><br> 02 C 4704 <br><br> Judge Ronald Guzman |

## MEMORANDUM OPINION AND ORDER

On July 2, 2002, Solaia Technology L.L.C. ("Solaia" or "plaintiff") filed suit against Arvinmeritor, Inc., The Boeing Company, Callaway Golf Company, Conoco, Inc., Eastman Kodak Company,[1] Enbridge, Inc., Enbridge Energy Company, Inc., Enbridge Energy Partners, L.P., The Gillette Company, Sun Chemical Corporation, and Tyco International Inc. ("defendants"). (Compl. ¶¶ 2, 22.) The complaint alleged infringement of Claims 11 and 12 of U.S. Patent No. 5,038,318 ("the '318 patent"). *Id.* The defendants Arvinmeritor, Inc., The Boeing Company, Callaway Golf Company, Concoco, Inc., Enbridge Energy Company, Inc., The Gillette Company, and Tyco International Inc. ("joint defendants") filed a Motion for Summary Judgment of Patent Invalidity Due to Lack of Enablement.

---

[1] Eastman Kodak and Boeing have now settled out of this lawsuit.

1

**FACTS**

The application that eventually matured into the '318 patent was filed on December 17, 1987. (Def.'s LR 56.1(a)(3)(B) ¶ 5.) The United States Patent and Trademark Office issued the '318 patent on August 6, 1991. *Id.* The '318 patent claims a particular type of PLC control system that moves messages directly between a commercial spreadsheet on a PC and two or more PLC's without using either the operating system or any device drivers. Claim 11 of the '318 patent reads in pertinent part:

> 11. A system for operating equipment by an operator, the system comprising:
> A. a plurality of programmable logic controllers coupled to the equipment . . .
> B. a computer having operably interconnected visual display, keyboard, memory, and central processor . . .
> C. Interface means electrically connected between said computer and said network for receiving messages from each of said programmable logic controllers . . .
> D. spreadsheet instruction means contained in said memory for effecting a general purpose spreadsheet program in said computer . . .
> E. add-in instruction means contained in said memory for presenting add-in menu commands and interrupt selected instructions operating through said spreadsheet instruction means for said interrupt selected instructions to move sequentially received messages from said message registers to respective assigned address locations in said memory upon occurrence of each interrupt signal, and for said add-in menu commands to move said messages from said assigned address locations in said memory to respective assigned cells in said spreadsheet instruction means so that messages from said programmable logic controllers indicating the condition of said equipment can be saved and moved directly to said cells.

Claim 12 of the '318 patent reads in pertinent part:

> 12. A device for transmitting and receiving electrical signals forming messages to and from respective addressable registers located in respective addressable programmable logic controllers that are connected together over a communications network, said device comprising:
> A. process means connected to said communications network for moving said electrical signals forming messages to and from respective registers located in said processor means . . .
> B. spreadsheet means contained in said processor means . . .
> C. add-in program means contained in said processor means for inserting in at least one cell information including the address of a particular register in a particular

2

>    programmable logic controller to which a message is to be sent and indicating the
>    content of said message; and
> d. add-in program means contained in said processor means for executing an action
>    in said spreadsheet means to cause said spreadsheet means to transmit said
>    message from said cell through said registers in said process means to the said
>    addressed particular register in said particular programmable logic controller.

The Joint Defendants have focused on the "add-in instruction means . . ." of Claim 11, and the "add-in program means" of Claim 12 in challenging the validity of the '318 patent.

In an earlier case, *Solaia Technology v. Jefferson Smurfit et al*, 01 C 6641, (N.D. Ill.), the Honorable James F. Holderman, in an order dated March 28, 2002, construed the disputed limitations of Claims 11 and 12. In this order, Claim 11's limitation "add-in instruction means' was construed to correspond to the structure "add-in program." ('318 patent, Fig. 2, Item 28.) Claim 12's limitation of "add-in program means" was construed to correspond to the same structure, "add-in program." ('318 patent, Fig. 2, Item 28.) For purposes of this Motion, both parties have agreed to accept that construction. (Def.'s LR 56.1(a)(3)(B) ¶8; Def.'s Reply Brief, at 5.)

The certified copy of the '318 patent states, "[t]he source code listing for the add-in program 28 of the invention comprises program pages 1-118 and is set forth herein." ('318 patent, col. 17, lines 3-5.) The source code was originally filed with the application that resulted in the '318 patent. (Pl.'s LR 56.1(b)(3)(B) ¶ 4.) However, the certified copy of the '318 patent does not include any printouts of the source code. (Def.'s LR 56.1(a)(3)(B) ¶ 6.) After the '318 patent issued, the public could gain access to the source code either by reviewing the file of the patent or by ordering a complete copy of the file history through a number of companies that provide that service. (Pl.'s LR 56.1(b)(3)(B) ¶ 5.)

The '318 patent describes the add-in program:

> Add-in program 28 present [sic] three features: menu commands to initialize the
> features for moving messages between the cells and the PLC registers, block moves

3

> of information between the cells and the PLC registers, fixed and floating point information formats and dumping the contents of the mailbox memory locations to assigned cells in the spreadsheet; @ functions to move messages between the spreadsheet cells and the PLC registers. [sic] and to perform logical operations; and interrupt driven information transfers from the interface card registers to corresponding memory locations in the mailbox area of the RAM memory 76. The add-in program 28 also includes memory locations 82 for local variables used in effecting the message transfers through the spreadsheet program 26.

('318 patent, col. 8, lines 12-29.)

Solaia has presented opinion testimony stating that the '318 patent specification and drawings include guidance and instructions on how a programmer could write the add-in program, and that the specific add-in program was not necessary to practice the invention. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 7,8.) Solaia presented opinion testimony stating that a programmer could write a program in a variety of programming languages by reviewing the unique guidance and instruction provided in the '318 specification. (Pl.'s LR 56.1(b)(3)(B) ¶ 13.) The '318 patent discloses the desirability of software which can communicate data from PLC to spreadsheet, prepare the spreadsheet for the receipt of data, and handle data transmission within the spreadsheet itself. (Pl.'s LR 56.1(b)(3)(B) ¶ 17.) Solaia has presented opinion testimony that based on the disclosures of the '318 patent, a skilled programmer could, within a reasonable amount of time, easily write software to implement the software portions of the preferred embodiment of the claims, and could locate, build, or install hardware to implement the hardware portions of the preferred embodiment of the claims. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 23, 27, 28, 29.) "Solaia made it clear in the specification that creating at least a portion of [t]he [sic] add-in program could easily be accomplished using commercial spreadsheet tools." (Pl.'s LR 56.1(b)(3)(B) ¶ 7.)

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Johnston v. IVAC*

4

*Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274 (Fed. Cir. 1995). Moreover, the court must "view . . . the evidence presented through the prism of the substantive evidentiary burden" that would inhere at trial. *Anderson*, 477 U.S. at 254. This burden rests upon an accused infringer, who must prove by clear and convincing evidence facts establishing a lack of enablement. *Morton Int'l Co. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed. Cir. 1993).

A patent grant is issued in exchange for an enabling disclosure of an invention. *White Consol. Indus., Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983) (stating, "[t]he *sine qua* non of a valid patent is a full, clear, *enabling* description of the invention") (emphasis in original); *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974). The enablement requirement of 35 U.S.C. § 112, ¶ 1 provides, in relevant part, that:

> The specification shall contain . . . the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connect, to make and use the [invention].

Enablement is determined at the time the patent application was filed. *In re Glass*, 492 F.2d 1228, 1232 (C.C.P.A. 1974); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345 (Fed. Cir. 2000), *cert. denied*, 121 S. Ct. 1957 (2001).

Determining whether a disclosure of a patent satisfies the enablement requirement is a question of law. *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984). However, as is true in many legal questions, the legal conclusion of enablement rests on

factual underpinnings. *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690 (Fed. Cir. 2001). A decision on the issue of enablement "requires determination of whether a person skilled in the pertinent art, using the knowledge available to such a person and the disclosure in the patent document, could make and use the claimed invention without undue experimentation." *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990).

"Factors to be considered in determining whether a disclosure would require undue experimentation . . . include: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988); *Enzo Biochem v. Calgene*, 188 F.3d 1362, 1371 (Fed. Cir. 1999) (holding that the *Wands* factors are applicable in infringement actions). Because these factors are illustrative rather than mandatory, courts should look to the facts of their specific case to determine what is relevant. *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991).

"That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive." *Atlas Powder Co.*, 750 F.2d at 1576. "The test [for undue experimentation] is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed." *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998).

To determine whether the '318 patent is enabled, this court must first determine whether the source code is part of the patent's disclosure. Whether a document is considered part of a patent's disclosure is a question of law. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446 (Fed. Cir.

1984) (holding determination of whether a document is incorporated by reference is a question of law). In *Southwest Software, Inc., v. Harlequin Inc.*, 226 F.3d 1280 (Fed. Cir. 2000), the Federal Circuit addressed a similar question. There, the patentee filed its patent application, including the source code for a claimed computer program. The patent itself stated, "Incorporated herein is a computer program listing printout appendix of source code . . . ." *Id.* at 1291. However, the certified copy of the patent did not include this appendix. *Id.* The patentee filed suit against the defendant, discovered the error, and subsequently filed for a Certificate of Correction to have the source code properly added. The United States Patent and Trademark Office ("PTO") admitted wrongdoing, and inserted the appendix into the specification. *Id.* However, the Federal Circuit held that for the purpose of the lawsuit, which was filed prior to the correction of the patent, the source code could not be considered part of the specification. *Id.* at 1299.

Similarly, here, the patentee filed the source code with its application that matured into the '318 patent. Also similar, the '318 states that the source code is "set forth herein." '318 patent, col. 17, lines 3-5. However, the certified copy does not have the source code appended to it. (Def.'s LR 56.1(a)(3)(B) ¶ 6.) 37 C.F.R. 1.77(c)(z) required that the "microfiche appendix" be referenced at the beginning of the specification, after the title of the invention and before the summary of the invention. Neither the application nor the certified '318 patent includes this reference to a microfiche appendix. See 37 C.F.R. 1.77(c)(z) (1983). Therefore, for the purposes of this motion, the source code will not be considered part of the patent document.

The joint defendants have argued that because the source code cannot be considered, the '318 patent is non-enabled as a matter of law. In *White Consolidated Indus., Inc. v. Vega Servo-Control, Inc.*, the patent was directed to a numerical control system whereby a machine tool is controlled by a computer program. 713 F.2d 788 (Fed. Cir. 1983). The invention required a language translator,

7

which was described in the specification as a "known translator capable of converting . . . a part program in programming language form into a part program in machine language form, as for example SPLIT. *Id.* at 789. The SPLIT program was a trade secret of a company related to the patentee. *Id.* The Federal Circuit held the patent invalid for lack of enablement, even though the program could be purchased. *Id.*; *see also Quaker City Gear Works, Inc.*, 747 F.2d 1446 (holding that incorporation by reference of material that is necessary for adequate disclosure but is unavailable to the public is not permissible). However, relevant to this decision, the court stated that the patentee was obliged to disclose . . . SPLIT, . . . *unless a suitable substitute could be obtained without undue experimentation. White Consolidate Indus., Inc.* 713 F.2d at 791 (emphasis added).

In *Southwest Software Inc.*, the Federal Circuit remanded after finding the source code not part of the patent so that a determination regarding undue experimentation could be made. *Southwest Software Inc.*, 226 F.3d 1280. That remand inherently held that the lack of the actual source code does not render a patent *per se* unenabled. *See id.*; *Northern Telecom, Inc.*, 908 F.2d at 941 (holding patent not invalid even where specific source code was not disclosed). Therefore, the joint defendants' assertion that the patentee's failure to disclose the source code mandates a finding of non-enablement is unfounded. Rather, this court must determine whether, given the lack of a source code, practicing the '318 patent would require undue experimentation.

"When the challenged subject matter is a computer program that implements a claimed device or method, enablement is determined from the viewpoint of a skilled programmer using the knowledge and skill with which such a person is charged." *Northern Telecom, Inc.*, 908 F.2d at 941. Courts have come to different conclusions when determining whether a claim including a computer program is enabled where the specification fails to disclose source code. In *White Consol. Indus., Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788 (Fed. Cir. 1983), the alleged infringer provided

evidence that writing a program that could carry out the claimed invention would require 1.5 "man" years of work. The court held that amount of experimentation to be undue. *Id.*

Conversely, in *Northern Telecom*, the patent specification failed to set forth a computer program for carrying out the claimed invention. The court looked to the nature of the invention, the role of the program in carrying it out, and the complexity of the contemplated programming, all from the viewpoint of a skilled programmer. It stated that "[t]he claimed invention of the ... patent [in suit] is not in the details of the program writing, but in the apparatus and method whose patentability is based on the claimed combination of components or steps." *Northern Telecom, Inc.*, 908 F.2d at 941. Ultimately, the court held that the evidence showed that "a programmer of reasonable skill could write a satisfactory program with ordinary effort," thus holding the patent not invalid. These cases demonstrate that there is no bright-line rule, but instead a court must look to the facts of a specific case to determine whether a program is enabled. *But see Fonar Corp. v. General Electric Co.*, 107 F.3d 1543 (Fed. Cir. 1997) (stating, in determining the objective second prong of a best mode analysis, "normally, writing code for ... software is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed").

The joint defendants have asserted that the "add-in instruction means" of Claim 11, and the "add-in program means" of Claim 12 are non-enabled. Because these limitations are in means plus function format, the structure corresponding to these limitations must first be found in the specification of the '318 patent. For purposes of this motion, the parties have agreed that the above-mentioned limitations refer to the structure of an "add-in program."[2] Therefore, the question to be

---

[2] The Joint Defendants have argued that the claimed "add-in instruction means" and "add-in program means" incorporate the structure of *the* add-in program, including the source code. In support of this argument, they cite the language used in the specification and comments made by the patentee in the prosecution history. However, the Joint Defendants have, for the purpose of this motion, stipulated that the structure is simply "add-in program 28." This language does not include the specific source code.

determined is whether the creation of an add-in program suitable to practice the invention would take undue experimentation.

This court looks to the substantially relevant *Wands* factors as a starting point for this analysis.

*The quantity of experimentation necessary*

Neither party has provided evidence of the specific amount of time it would take to implement the add-in program. Instead, each party has proffered conclusory statements that predictably range from "undue" to "not undue." Plaintiff does, however, provide some opinion testimony as to how difficult it would be to write the add-in program, given the '318 patent's disclosure. *See supra.* While in their reply the joint defendants have argued that such evidence is inaccurate, it is up to the trier of fact, not this court, to determine the credibility of the plaintiff's witnesses and their statements. For purposes of this determination, then, this factor favors plaintiff.

*The amount of direction or guidance presented*

The more guidance that a patent provides, the less experimentation, both qualitative and quantitative, is required of one trying to practice the invention. Plaintiff has provided opinion testimony that the '318 patent provides guidance to one of skill in the art. *See supra.* Plaintiff has also cited portions of the '318 patent that describe some of the components and functions of the add-in program. *See* '318 patent, col. 8, lines 12-29. This evidence is especially relevant given the Federal Circuit's holding in *Fonar Corp. Fonar*, 107 F.3d 1543 (stating, "normally, writing code for . . . software is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed"). This factor therefore favors plaintiff.

*The presence or absence of working examples*

The joint defendants have demonstrated, by showing that the source code was not included in the certified copy, that the '318 patent does not disclose a working example of the add-in program. Therefore, this factor favors the joint defendants.

*The state of the prior art*

Plaintiff has provided evidence that the source code is accessible to the public because the prosecution history, which includes the source code, can be obtained from the PTO. *See supra.* However, the public's current access is irrelevant. Enablement is determined as of the filing date of the application. *Ajinomoto Co.*, 228 F.3d at 1345. The public does not have access to a patent application when it is filed; it is held confidential by the PTO until it is published or the patent issues. *See* Manual of Patent Examining Procedure, ch. 100 *et. seq.* Therefore, the source code is not part of the prior art.

The joint defendants have stated that, "Solaia made it clear in the specification that creating at least a portion of [t]he [sic] add-in program could easily be accomplished using commercial spreadsheet tools." (Pl.'s LR 56.1(b)(3)(B) ¶ 7.) This statement suggests that one skilled in the art could look to then available commercial spreadsheet tools, which are part of the prior art, to write at least part of the add-in program. Construing this statement in a light most favorable to the plaintiff, this factor favors plaintiff.

*Relative skill of those in the art*

The Federal Circuit has held that when dealing with a computer program that implements a claimed device or method, "enablement is determined from the viewpoint of a skilled programmer using knowledge and skill with which such a person is charged." *Northern Telecom, Inc.*, 908 F.2d 931. While this language is helpful, the parties have failed to adequately establish the "knowledge

11

and skill" that a computer programmer would have as of the filing date of the '318 patent's application. The Court is therefore unable to apply this factor.

While application of the *Wands* factors is not mandatory, we find them illuminating in this determination. Enablement is a question of law based on underlying factual inquiries. It is the burden of joint defendants to demonstrate that the '318 patent is invalid with clear and convincing evidence. However, joint defendants have not established the level of skill in the art, nor have they provided substantive evidence regarding how long it would take or how difficult it would be for one of skill in the art to write a suitable program. While an alleged infringer is not required to put forth evidence to establish each of the *Wands* factors in its favor, the failure to put forth evidence regarding a number of the *Wands* factors is clearly relevant in determining whether an infringer has met its evidentiary burden of establishing invalidity by clear and convincing evidence. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998). Also, Plaintiff has demonstrated that there are questions of material fact regarding the *Wands* factors for which the joint defendants did proffer some evidence. *See supra.*

For a majority of the *Wands* factors, there was either a failure to introduce sufficient evidence or questions of material fact where evidence was introduced. As a result, the factual underpinnings required to make an enablement determination have not been resolved. Therefore, this court cannot hold the '318 patent non-enabled as a matter of law. The joint defendants' Motion for Summary Judgment of Patent Invalidity Due to Lack of Enablement is denied.

## CONCLUSION

For the foregoing reasons, this Court denies joint defendants' motion for summary judgment with prejudice (#210-1).

**SO ORDERED**

ENTERED: 9/17/03

HON. RONALD A. GUZMAN
United States Judge