UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Solaia Technology LLC, | )<br>)<br>) |
| Plaintiff, | ) No. 02-C-4704<br>) |
| v. | ) Judge Mark Filip<br>) |
| ArvinMeritor, Inc., | ) Magistrate Judge Nan R. Nolan<br>) |
| Defendant, | )<br>) |
| v. | )<br>) |
| Rockwell Automation Inc., | )<br>) |
| Third-Party Defendant-<br>Cross-Claim Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| Solaia Technology LLC, | )<br>) |
| Cross-Claim Defendant-<br>Counterclaim-Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| Rockwell Automation Inc., | )<br>) |
| Counterclaim-Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Solaia Technology LLC ("Solaia") moves for summary judgment on its counterclaim against Rockwell Automation Inc. ("Rockwell") for infringement of United States

Patent No. 5,038,318 ("the '318 patent"). (D.E. 603.[1]) Rockwell has filed a cross-motion for summary judgment of non-infringement against Solaia. (D.E. 621.) This Order addresses Solaia's motion for summary judgment only. Rockwell's cross-motion for non-infringement is addressed in a separate order issued contemporaneously. For the reasons stated below, the Court denies Solaia's motion.

I.  **Background**

In July 2002, Solaia initiated this suit against ArvinMeritor and fifteen other large industrial corporations. (*See* Compl. (D.E. 1).) In its suit, Solaia alleged that the defendants infringed claims 11 and 12 of Solaia's '318 patent. (*Id.* ¶ 22.) ArvinMeritor (and at least some of the other defendants) allegedly utilize Rockwell-manufactured industrial automation products that, Solaia alleges, infringe the '318 patent. (*See* Third-Party Pl. ArvinMeritor, Inc.'s Third-Party Compl. (D.E. 131) ¶¶ 11, 25; Answer of Third-Party Def. Rockwell to Third-Party Pl. ArvinMeritor, Inc.'s Third-Party Compl. (D.E. 167) ¶¶ 9-11.) ArvinMeritor and other defendants filed complaints for indemnification against Rockwell, which brought Rockwell into this litigation. (*See, e.g.*, D.E. 131.)

Rockwell thereafter asserted cross-claims against Solaia, seeking declaratory judgment that, *inter alia*, "[n]one of the products or systems, including the Rockwell systems, manufactured, offered for sale, sold or used by Rockwell Automation infringes, directly or indirectly, any valid and enforceable claim of the '318 patent." (D.E. 167 ¶ 70.) Solaia eventually counterclaimed in the instant case against Rockwell, alleging that Rockwell had infringed Solaia's '318 patent. (Solaia's Reply to Rockwell's Cross-cl. for Declaratory J. and

---

[1] The designation "D.E." refers to the docket entry number of the cited document.

Solaia's Compulsory Countercl. (D.E. 360).) This case is before the Court on Solaia's motion for summary judgment of infringement.

### A. '318 Patent

The '318 Patent, titled "Device for Communicating Real Time Data Between a Programmable Logic Controller and a Program Operating In a Central Controller," discloses a system of programmable logic controllers ("PLCs") that "direct[s] automatic operation of such as machine tools, and process equipment to manufacture goods," and that "furnish[es] true real-time control of such programmable logic controllers (PLCs) through a general purpose spreadsheet program operating in a personal computer." ('318 patent, col. 1, lines 9-16.) The patentee acknowledged that prior to the invention, PLCs had been linked together in networks to coordinate the operation of a entire manufacturing system or processing plant. (*Id.*, col. 1, line 67 – col. 2, line 1.) In these previous systems, however, any manufacturing changes desired by the operator of the manufacturing equipment had to be implemented by reprogramming the individual PLC. (*Id.*, col. 2, lines 30-39.) "Developing customized programs that directly enabled an operator at a personal computer to supervise and actually control the automatic operation of the PLCs quickly becomes expensive due to the large amount of highly skilled labor." (*Id.*, col. 2, lines 40-44.) In the programs then available to provide this kind of "real time" exchange of information, a user would provide a circuit card interface between his process or instrument and the personal computer used to supervise it. (*Id.*, col. 2, lines 64-66.) The user would then write a "device driver program for the personal computer that facilitates the operating system program to communicate with the circuit card interface." (*Id.*, col. 2, line 66 – col. 3, line 1.) The user would then install a "commercially available information acquisition program to

transfer desired information between the operating system program and popular and commercially available spreadsheet, data base and analysis programs," which would enable a user to control the manufacturing process from the spreadsheet, data base or analysis program. (*Id.*, col. 3, lines 1-8.)

The patent discloses a program "that operates through a general purpose spreadsheet program to effect information transfers to and from the addressable registers of a PLC and assigned cells of a displayed spreadsheet directly from the spreadsheet program without transfers through the operating system program or a specially written device driver program." ('318 patent, col. 3, lines 35-42.) The disclosed system includes a network of PLCs that can receive and transmit messages to monitor and control the operation of the machine tool or processing station; a personal computer, including an interface card; a general purpose spreadsheet program; and an "add-in" program that adds communication functions to the spreadsheet program. (*Id.*, col. 3, lines 20-68.) This add-in program allows a spreadsheet program to move data directly to and from the interface card in the computer (*id.*, col. 5, lines 1-4), whereas such program normally only would be able to effect movement of information between files of data included in the memory and the cells of the spreadsheet (*id.*, col. 4, lines 61-64).

Claims 11 and 12 of the '318 patent are at issue in this suit. Claim 11 recites, in pertinent part:

> 11. A system for operating equipment by an operator, the system comprising:
>
> > A. a plurality of programmable logic controllers coupled to the equipment, said programmable logic controllers each transmitting messages on a network indicating the condition of said equipment;
> >
> > B. a computer having operably interconnected visual display, keyboard, memory,

and central processor . . .

> C. *interface means* electrically connected between said computer and said network for receiving messages from each of said programmable logic controllers, said interface means *including a plurality of message registers, of which at least one of said message registers is associated with each of said programmable logic controllers* . . .
>
> D. spreadsheet instruction means contained in said memory for effecting a general purpose spreadsheet program in said computer . . . and
>
> E. add-in instruction means contained in said memory for presenting add-in menu commands and interrupt selected instructions operating through said spreadsheet instruction means for said interrupt selected instructions to move sequentially received messages from said message registers to respective assigned address locations . . . so that messages from said programmable logic controllers indicating the condition of said equipment can be saved and moved directly to said cells.

('318 patent, col. 16, line 44 – col. 17, line 22 (emphasis added).) Claim 12 recites, in pertinent part:

> 12. A device for transmitting and receiving electrical signals forming messages to and from respective addressable registers located in respective addressable programmable logic controllers that are connected together over a communications network, said device comprising:
>
> > A. *[processor]*[2] *means* connected to said communications network for moving said electrical signals forming messages to and from *respective registers located in said processor means*, said *respective registers for each of said respective addressable programmable logic controllers* being addressable form [sic] said communications network and accessible from said processor means;
> >
> > B. spreadsheet means contained in said processor means, said spreadsheet means presenting a spreadsheet of cells into which information can be inserted to facilitate executing actions through said spreadsheet means . . .
> >
> > C. add-in program means contained in said processor means for inserting in at least one cell information including the address of a particular register in a

---

[2] The '318 patent claims a "process means" rather than a "processor means." As all parties have treated this claim as though it reads "processor," the Court will do the same.

5

>    particular programmable logic controller . . . and
>
>    D. add-in program means contained in said processor means for executing an action in said spreadsheet means to cause said spreadsheet means to transmit said message from said cell through said registers in said process means to the said addressed particular register in said particular programmable logic controller.

(*Id.*, col. 17, lines 23-56 (emphasis added).)

In an earlier lawsuit initiated by Solaia involving the '318 patent, a court in this district construed certain claims pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). (*See* Solaia's Ex. T (*Solaia Technology v. Jefferson Smurfit*, No. 01 C 6641 (order) (N.D. Ill. March 28, 2002) (Holderman, J.)) ("*Jefferson Smurfit* Order").) Both parties in this case have argued their respective positions based on the claim construction of the *Jefferson Smurfit* Order, to the extent it is applicable. (*See* D.E. 601 (Mem. by Pl. in Supp. of its Mot. for Summ. J.) at 14-17; D.E. 619 (Rockwell's Opp. to Solaia's Summ. J. Mot. of Infringement) at 16, 18, 23, 25.) Thus, for the purposes of this Motion, the Court will not revisit the claims that have already been construed.[3]

### B. Rockwell's System

Rockwell manufactures and sells products comprising the "RSView System," which consists of Rockwell's graphical user interface software called RSView; a Rockwell interface card; a Rockwell network connection; Rockwell PLCs; and Rockwell's RSLinx program, which provides device drivers for the interface cards. (D.E. 600 (Solaia's Local Rule 56.1(a) Statement of Material Facts ("Solaia's SF")) ¶ 5.)

---

[3] The Court need not—and does not—decide whether it is bound, as Solaia suggests, by the *Jefferson Smurfit* construction by application of the doctrine of collateral estoppel. (*See* D.E. 601 at 14-17.)

In this motion, Solaia argues that all of the claim limitations of claims 11 and 12 read on this system. Rockwell challenges the motion based on the following claim limitations: the "add-in instruction means" of claim 11 and "add-in program means" of claim 12; the general purpose spreadsheet program structure required by both claims 11 and 12; and the "interface means" of claim 11 and the "processor means" of claim 12. Rockwell also argues that certain techniques were expressly disavowed during the prosecution of the patent, namely communications that use device driver programs, that transfer data through a computer's operating system, and that use the client-server model. Therefore, according to Rockwell, the RSView system, which uses these techniques, cannot be held to infringe the patent as a matter of law. For the reasons described below, the Court finds that, on the record presented, summary judgment is improper. Taking all facts in favor of the non-movant, a jury reasonably could conclude that there is no literal infringement because the "interface means" limitation of claim 11 and the "processor means" limitation of claim 12 do not read on the accused Rockwell system. The Court does not reach the other arguments made by the parties.

## II. Discussion

### A. Legal Standards

Summary judgment is appropriate in a patent case where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998). Summary judgment is proper where, based on the evidence put forward by the nonmovant, no reasonable jury could find that the alleged infringer's product or process does not infringe the patent. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370,

1376 (Fed. Cir. 2004); *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39 n.8 (1997).

"The determination of infringement is a two-step analysis: (1) claim construction to determine the scope and meaning of the claims asserted to be infringed, and then (2) a determination of whether the properly construed claims encompass the accused device." *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1315 (Fed. Cir. 1999); *accord Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.,* 365 F.3d 1299, 1302 (Fed. Cir. 2004). The patentee has the ultimate burden of proving that the accused device meets each and every element of the asserted claims, either under literal infringement or the doctrine of equivalents. *Deering Precision Instruments, LLC v. Vector Distr. Sys., Inc.,* 347 F.3d 1314, 1324 (Fed. Cir. 2003); *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed. Cir. 1985). There can be no infringement as a matter of law if a claim limitation is not found in the accused device. *Phonometrics Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1467 (Fed. Cir. 1998) (citing, *inter alia, Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 935 (Fed. Cir. 1987) (*en banc*)).

Claim limitations may be written in a "means-plus-function" format, as governed by 35 U.S.C. § 112, ¶ 6. Under that provision, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Claim construction under a means-plus-function format consists of identifying the claimed function and the corresponding structure of each claim. *WMS Gaming Inc. v. Int'l Game*

*Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999).

To literally infringe a means-plus-function limitation, the accused device must "perform the identical function as specified in the claims." *WMS Gaming Inc*, 184 F.3d at 1347 (quoting *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 1039, 1042 (Fed. Cir. 1993)) (internal quotation omitted). If it performs the identical function, an accused device literally infringes only if it is "insubstantially different" from the corresponding structure in the patent specification. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) (citing, *inter alia*, *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)). The "insubstantial difference" analysis is a modified version of the function-way-result methodology described in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950). *See Kemco Sales*, 208 F.3d at 1364. "Thus, [t]wo structures may be 'equivalent' for the purposes of section 112, paragraph 6 if they perform the identical function, in substantially the same way, with substantially the same result." *Id.* (citing *Odetics*, 185 F.3d at 1267). "Functional identity and either structural identity or equivalence are *both* necessary" for infringement of a section 112, ¶ 6 claim limitation. *Odetics,*, 185 F.3d at 1267 (citing *Pennwalt*, 833 F.2d at 934 ) (emphasis in original).

"Whether an accused device or method infringes a claim with a § 112, ¶ 6 limitation, i.e., whether it performs the identical function with the same structure, materials, or acts described in the specification or an equivalent thereof, is a question of fact." *IMS Tech.*, 206 F.3d at 1430 (citing, *inter alia*, *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1268-69 (Fed. Cir. 1999)). Thus, "summary judgment of infringement is improper if a reasonable jury could find that not every limitation of the claim in question would be met by the product." *Abbott Labs. v.*

*TorPharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) ("An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.").

### B. Analysis

#### 1. Claim 11's "interface means" limitation

As construed in the *Jefferson Smurfit* Order, the claimed function of the "interface means" limitation is "connecting electrically 'between said computer and said network for receiving message from each of said programmable logic controllers . . . [having a] plurality of message registers, of which at least one of said message registers is associated with each of said programmable logic controllers, the messages from each of said programmable logic controllers being overwritten on a preceding message in said registers, said interface means including interrupt means.'" *Jefferson Smurfit* Order ¶ 3 (quoting '318 patent, col. 16, lines 54-63) (alteration in original). The corresponding structure for the interface means is an interface card disclosed in figure 2, item 24 of the '318 patent. *Id.* (citing '318 patent, col. 8, lines 5-7). The judge in the *Jefferson Smurfit* Order construed the term "plurality" to mean "more than one, but not less than two." *Id.* ¶ 7.

There is no dispute that the RSView System contains an interface card. Rather, the parties dispute whether that interface card performs the claimed function. Solaia argues that the

Rockwell interface cards perform the identical function of the "interface means."[4] Rockwell argues that the Rockwell interface cards do not have a "plurality of message registers, of which at least one of said message registers is *associated with each* of said programmable logic controllers." ('318 patent, col. 16, lines 57-60.) Solaia offers the testimony of its expert, Walter Nuschke, that the interface cards perform this function. (Solaia SF ¶¶ 66, 67 (citing, *inter alia*, Solaia's Ex. S (Nuschke Decl.) at ¶¶ 21-35).) According to evidence offered by Rockwell in response to Solaia's expert, the Rockwell interface cards share a single reusable memory space that is used by all of the PLCs (D.E. 623 (Rockwell's Resp. to Solaia's Statement of Material Facts ("Rockwell's Resp.") ¶ 66 (citing, *inter alia*, Rockwell's Ex. 14 at RA 1250-51, 1266-67)), and thus, the Rockwell interface card does not perform the function requiring at least one register to be "associated with" each PLC. The *Jefferson Smurfit* Order does not construe the phrase "associated with," so the Court must do so in the first instance.

"'To ascertain the meaning of claims, [a court] consider[s] three sources: the claims, the specification, and the prosecution history.'" *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). In construing a patent term, "words in a claim are generally given their ordinary and customary meaning," unless the patentee has chosen to be his own lexicographer by using terms in a manner other than their ordinary meanings. *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d

---

[4] Solaia does not argue that it is entitled to summary judgment under the doctrine of equivalents because the Rockwell's interface card performs a substantially similar function to that claimed in the "interface means" or the "processor means." (*See* D.E. 601 at 37-38, 39.) *See Kemco Sales*, 208 F.3d at 1364 (infringement analysis of means-plus-function claim under the doctrine of equivalents differs from literal infringement in that the identical function is not required; the equivalent "need only perform a substantially similar function"). Thus, the Court will address only the question of literal infringement in this motion.

11

1576, 1582 (Fed. Cir. 1996). The Federal Circuit teaches that "dictionaries, encyclopedias and treatises are particularly useful resources to assist the court in determining the ordinary and customary meanings of claim terms." *Texas Digital Sys., Inc. v. Telegenix*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) (collecting cases). These sources provide "unbiased reflections of common understanding not influenced by expert testimony or events subsequent to the fixing of the intrinsic record by the grant of the patent, not colored by the motives of the parties, and not inspired by litigation." *Id.* at 1203.

The plain meaning of "associated" is "connected with something else." *The New Oxford American Dictionary* 97 (Elizabeth J. Jewell and Frank Abate eds., 2001); *see also id.* (definition of "associate" includes "(usu. be associated) connect (something) with something else because they occur together or one produces another"). Rockwell argues that "associated with" requires that there is a "predetermined" connection between a register on the interface card and a particular PLC. (*See* D.E. 619 at 24.) Solaia responds that "predetermined" is not part of the claim language and should not be read into the claim limitation. Solaia does not offer an alternative meaning for "associated with." However, it does argue, through Nuschke's declaration, that the allocation of a suitable register within the dual port buffer[5] (which is the shared memory space) once the message has been received by the interface card, "associates that register with the PLC." (Solaia's Ex. S (Nuschke Decl.) ¶ 27.) Thus, as best the Court can tell, Solaia argues that the mere assignment of a message from a PLC to any register in the Rockwell interface card's buffer pool performs the "associated with" limitation of the claimed function

---

[5] A "buffer" is "[a] unit of memory given the task of holding information temporarily, especially while waiting for slower components to catch up." *Webster's New World Dictionary of Computer Terms, 8th Ed.* 78 (Bryan Pfaffenberger 2000).

12

once that assignment has been made. This construction, with all respect, reads the phrase "associated with" out of the claim limitation altogether because no "connection" is found between a PLC and a particular register; there is mere *use* of a register by a particular PLC. (The obvious electrical connection between the PLC and the register in the interface card when a message is being transferred is not the kind of "connection" that defines "associated.") Without some kind of pre-defined connection between each PLC and one or more message registers, the phrase "associated with" is doing no work in the claimed function. "All the limitations of a claim must be considered meaningful," *Unique Concepts*, 939 F.3d at 1562, and a construction which reads out a limitation is improper. Thus, the Court construes the claim limitation "a plurality of message registers, of which at least one of said message registers is associated with each of said programmable logic controllers" to mean "at least one, but not less than two message registers, of which at least one of said message registers has a predetermined connection with each PLC."

Next, the Court looks, as precedent directs, to the intrinsic evidence to determine whether there is any reason to believe that the ordinary and customary meaning of the term is rebutted or modified. *Texas Digital*, 308 F.3d at 1204; *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Rockwell cites to the inventor's response to an office action regarding issued claim 11's interface means. The PTO originally rejected claim 3 (issued claim 11), and the examiner asked the inventor to clarify some language. In particular, the examiner queried, "In claim 3, lines 20-21, is there one message register for all of the programmable logic controllers or is there a one-to-one correspondence between message registers and programmable logic controllers?" (Rockwell's Ex. 3 (Feb. 26, 1990 Office Action) at 2.) In response to that

13

office action, the inventor amended the claim language as follows by inserting the underlined language: "said interface means including a <u>plurality of</u> message registers, <u>of which at least one of said message registers is</u> associated with each of said programmable <u>logic</u> controllers." (Rockwell's Ex. 5 (Sep. 5, 1990 Amendment) at 4.) This amendment confirmed that there is more than one message register for all the PLCs (by adding the phrase "plurality of"), but it does not clearly indicate whether the inventor intended for there to be a one-to-one correspondence between a message register and a PLC. Indeed, the language suggests the contrary, in contrast to the opinion of Rockwell's expert, Kevin Welch. (*See* Rockwell's Ex. 12 (Welch Report) at 68.) The function requires an association between the registers and the PLCs, but it does not define the contours of that association. It thus appears that the inventor chose to answer the examiner's question as to the uncertainty of his previous language by offering a third option: the interface means has more than one register for the PLCs, but one-to-one correspondence is not necessary. Thus, as Rockwell acknowledges, an interface card that has two or more registers associated with a single PLC will have identity with the function of the interface means in claim 11 requiring registers to be "associated with" each PLC. (*See* Rockwell Resp. ¶ 67.)

What this amendment does show, however, is that Solaia incorrectly argues that "[t]he specification describes an embodiment which recycles and re-uses registers in the same way Rockwell claims its 'Rockwell Systems' operate." (D.E. 646 (Solaia's Combined Reply in Support of Its Mot. for Summ. J. of Infringement and Resp. to Rockwell's Mot. for Summ. J. of Non-Infringement) at 27.) Solaia points to the description of Figure 5 in the '318 patent, which states, "Each PLC addresses a particular one of the receiving registers 106a through 106n for receiving the sent messages. Alternatively, the interface circuit card 24 can have one receiving

14

register to receive all messages initiated by the PLCs upon suitable arrangement of the system to insure positive receipt and protection of the messages." ('318 patent, col. 10, lines 31-37.) This, according to Solaia, is a corresponding structure to the interface means, and thus demonstrates that the "associated with" limitation does not require a "dedicated" connection between message registers and a PLC because one register receives a message from multiple PLCs.[6] Apart from the fact that Solaia makes this argument for the first time in its reply brief, and it is thus arguably waived, Solaia's argument is, with all respect, misplaced. This description of an interface card with a single receiving register runs counter to the clear meaning of the language "plurality of message registers" in the interface means limitation. ('318 patent, col. 16, lines 57-58.) This statement, "rather than providing an illustration of a [claim limitation] . . . provides an alternative to it," *Unique Concepts*, 939 F.2d at 1562, and should not be used to inform the meaning of "associated with." Thus, the Court has found nothing in the specification or prosecution history that would indicate a construction contrary to that provided by the plain meaning.

Having thus construed the function of the interface means, the Court then looks to whether a reasonable jury could find that the claim limitation reads on the accused system. *WMS Gaming*, 184 F.3d at 1350. The Court concludes that no reasonable jury could find that the Rockwell interface cards perform the identical function recited in the claim, and thus, Solaia is not entitled to judgment as a matter of law. Solaia's own expert offered evidence that the Rockwell interface cards "allocate a suitable dual port buffer to place the packet [data or message] into and will deallocate the buffer when the PC returns the mailbox marked complete." (Solaia's Ex. S (Nuschke Decl.) ¶ 27.) "In other words, the interface card assigns a specific

---

[6] Solaia cites to Nuschke's declaration for this argument. (*See* Solaia's Ex. S ¶ 35.)

register the task of storing a packet for transmission to a specific PLC." (*Id.*) Solaia presents no evidence that there is any predetermined connection between a specific register or registers and each PLC. Thus, on the record presented, Solaia is not entitled to summary judgment as to claim 11. *See Phonometrics Inc.*, 133 F.3d at 1467 (there can be no infringement as a matter of law if a claim limitation is not found in the accused device).

2.  Claim 12's "processor means"

As construed in the *Jefferson Smurfit* Order, the claimed function of the "processor means" limitation is "'moving said electrical signals forming messages to and from respective registers located in said processor means, said respective registers for each of said respective addressable programmable logic controllers being addressable form [sic] said communications network and accessible from said processor means.'" *Jefferson Smurfit* Order ¶ 8 (quoting '318 patent, col. 17, lines 30-36) (alteration in original). The corresponding structure for the "processor means limitation" is "a personal computer with a memory and a central processor with an interface card, whether the interface card is electrically connected to data, address and control leads of the personal computer, and the interface cards connects to the network of programmable logic controllers." *Id.* (citing '318 patent, col. 4, lines 31-36, 42-45). The Order construed "respective registers" to mean "one register within the interface card corresponding to each register of the addressable programmable logic controllers in the network." *Id.* ¶ 11.

Both parties make essentially the same arguments related to the processor means of claim 12 that they made for the interface means of claim 11. Rockwell argues that there is no one-to-one (or other) relationship between the registers on the Rockwell interface cards and the PLCs. Solaia offers Nuschke's declaration that states that the Rockwell interface cards "contain[]

respective registers in the form of dual port RAM." (Solaia's Ex. S (Nuschke Decl.) ¶ 127; *see also* Solaia's SF ¶ 86 (citing Solaia's Ex. S (Nuschke Decl.) ¶¶ 121-33).) In the evidence presented to the Court, however, Nuschke does *not* state that the Rockwell interface cards have "one register within the interface card corresponding to each register of the addressable programmable logic controllers in the network." *Jefferson Smurfit* Order ¶ 11. The evidence presented as to the Rockwell interface cards indicates that messages are transmitted through the dual port RAM via a buffer pool and/or mailboxes. (Solaia's Ex. S (Nuschke Decl.) ¶ 27; Rockwell's Ex. 14 at RA 001250-51.) No evidence has been offered that the limitation requiring "respective registers" is present. Thus, there is no evidence from which a reasonable jury could find that the "respective registers" limitation of the "processor means" function is identically performed by the accused Rockwell interface cards, and Solaia is not entitled to summary judgment as to claim 12 on the record presented. *See Phonometrics Inc.*, 133 F.3d at 1467 (there can be no infringement as a matter of law if a claim limitation is not found in the accused device).

## III. Conclusion

For the reasons stated above, the Court denies Solaia's motion for summary judgment (D.E. 603) as to claims 11 and 12.

So ordered.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: _March 28, 2005_